IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA O'BRIEN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No.: 09-CV-02629 |
| v. | : | |
| | : | |
| | : | |
| PERSON DIRECTED SUPPORTS,INC. | : | |
| LYNN MACROT, KENNETH GIBAT, | : | |
| and CHERI TRESKOTT, | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

ORDER

**AND NOW**, this        day of              , 2010, upon consideration of Defendant's Motion for Summary Judgment, and the opposition thereto, it is hereby ORDERED and DECREED that said Motion is DENIED.

BY THE COURT:

_____

STENGEL, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA O'BRIEN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No.: 09-CV-02629 |
| vi. | : | |
| | : | |
| | : | |
| PERSON DIRECTED SUPPORTS,INC. | : | |
| LYNN MACROT, KENNETH GIBAT, | : | |
| and CHERI TRESKOTT, | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

## PLAINTIFF'S ANSWER TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Melinda O'Brien, comes herewith, by and through her undersigned counsel, and respectfully answers Defendants' Motion for Summary Judgment. Reliance is placed upon the statements of fact and legal arguments set forth in the attached Memorandum of Law, and the Memorandum of Law filed in support of Plaintiff's Motion for Summary Judgment.

HAHALIS & KOUNOUPIS, P.C.

By:/s/David L. Deratzian
David L. Deratzian, Esquire
20 East Broad Street
Bethlehem, PA 18018
(610) 865-2608
Attorneys for Plaintiff

Dated: May 17, 2010

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MELINDA O'BRIEN,                    :        CIVIL ACTION
               Plaintiff,        :
                           :        No.:  09-CV-02629
      vii.                            :
                           :
                           :
PERSON DIRECTED SUPPORTS,INC.       :
LYNN MACROT, KENNETH GIBAT, :
and CHERI TRESKOTT,                 :
               Defendants.        :        JURY TRIAL DEMANDED

BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT


## I.    INTRODUCTION

This is a claim arising under the provisions of the Family and Medical Leave Act, 29 U.S.C. § 2615(a), the Americans with Disabilities Act and the Pennsylvania Human Relations Act.  Plaintiff alleges that she was terminated because of her use of protected Family and Medical Leave and Request for Reasonable Accommodation, and that that termination constitutes interference with her FMLA rights, as well as discrimination under the FMLA, and retaliation and a failure to accomodate under the ADA and PHRA.

Defendant has filed this Motion for Summary Judgment, withdrawing from the Court's consideration whether Plaintiff's medical conditions constituted a "disability" under the ADA and that the condition also led to her requests for

medical leave under the FMLA.[1]  The issues before the Court now are:

1.  Whether Plaintiff's application for unemployment benefits defeats her claims under the ADA?

2.  Whether Plaintiff has established her *prima facie* case for retaliation under the ADA? and

3.  Whether the termination of Plaintiff's employment was a "legitimate business decision?[2]

Defendants seem to be under the mistaken notion that the burden shifting framework of *McDonnell-Douglas* governs the disposition of this case.  It does not.  Since there is direct evidence that Plaintiff was terminated because of her leave status (and indeed, Defendants' motion is replete with admissions to this motive), this is a claim governed by the mixed motive analysis set forth in *Price Waterhouse v. Hopkins*, which remains applicable under the FMLA and ADA after *Gross v. FBL Fin. Servs., Inc.,* 129 S. Ct. 234 (2009). *See  Hunter v. Valley View Local Schools*, 579 F.3d 688 (6th Cir. 2009).

Even if this Court were to analyze this case under *McDonnell-Douglas*, Plaintiff can easily satisfy the minimal burden of her *prima facie* case.  The burden would then shift to Defendants to articulate a <u>legitimate</u>, non-discriminatory reason for the termination.  Defendants cannot do this, since they have admitted that the decision to terminate Plaintiff was because of her leave status, and are therefore not "legitimate."  Since the taking of leave is Defendants' stated reason

---

[1] *See* Defendant's Motion for Summary Judgment, footnote 1.
[2] *See* Defendant's  Motion for Summary Judgment, p. 13.

for termination, they have failed to adduce evidence of a legitimate, non-discriminatory reason, and have therefore not sustained the ordinarily minimal burden of production for the second *McDonald-Douglas* step. Defendants' motion must be denied.

## II.    SUMMARY OF EVIDENCE SUPPORTING PLAINTIFF'S CLAIM

### A.  Plaintiff's Response to Defendants' Statement of Facts

We initially note that Defendants have failed to comply with this Court's Standing Order regarding the filing of Summary Judgment Motions, namely that they have failed to file a separate Statement of Undisputed Material Facts. Plaintiff will therefore reproduce the factual section of Defendant's Motion in paragraph form, and respond to each allegation.

1.  The Plaintiff, Melinda O'Brien, is an adult resident of Pennsylvania. Complaint at paragraph 5.

    **Response:  Admitted.**

2.  Ms. O'Brien is a former employee of Person Directed Supports, Inc. (referred to hereinafter as "PDS"), the defendant in this matter. Complaint at paragraph 6.

    **Response:  Admitted.**

3.  PDS is a non-profit Pennsylvania corporation that offers residential and related services to persons with mental and physical disabilities.

    **Response:  Admitted.**

4.  The individual defendants named in this action are Ken Gibat, the Executive Director of PDS, Lynn Macort, the Chief Operating Officer at PDS, and Cheri Trescott, the Office Manager.  Complaint at paragraphs 12, 13, 14.

**Response:** Admitted.

5. Plaintiff was hired at PDS as a full-time employee on April 21, 2004.

   **Response:** Admitted.

6. At that time she worked as a general support staff employee.

   **Response:** Admitted.

7. After only six months, on November 12, 2004, the defendants promoted Ms. O'Brien to a Supervisor position, where she worked until the early months of 2007. See Exhibit 1, affidavit of Ken Gibat attached hereto.

   **Response:** Admitted.

8. During this time, PDS granted Ms. O'Brien regular and steady salary increases.

   **Response:** Admitted.

9. During this time as well, Plaintiff advised PDS that she suffered from an illness known as Crohn's Disease, which affects the intestinal and digestive tract of those who have it. See Exhibit E attached to the Gibat Affidavit.

   **Response: Denied. On the contrary, Plaintiff advised Defendant Gibat that she had been diagnosed with Crohn's Disease in 2001, when they were both employed at Salisbury Behavioral Health. See Plaintiff's Affidavit, Exhibit A, ¶ 12 hereto.[3]**

10. Exhibit E [to the Gibat Affidavit] is an undated [sic] written by the Plaintiff in which she states, while requesting a loan from the Defendant Ken Gibat to help her pay her rent, that she has "been diagnosed with Cron's [sic] disease since 1999 . . .."

    **Response:** Admitted.

11. On January 18, 2007, Plaintiff was absent from work and presented a note from her doctor stating that Ms. O'Brien would need to be out of

---

[3] Plaintiff was not deposed in this case.

4

work until February 5, 2007, due to a "flare up of gastrointestinal disorder." See Gibat Affidavit at Exhibit F attached thereto.

Response: Admitted.

12. Immediately, Defendant Macort communicated with the Plaintiff about her return to work and about her abilities to perform her job when she returned.

Response: Denied. Plaintiff's Affidavit, Exhibit A, ¶ 8.

13. Based on those communications and on statements that the Plaintiff made during the communications expressing an inability to continue performing supervisory duties over other employees, the Defendants created an entirely new position for the Plaintiff that relieved her of all supervisory responsibilities.

Response: Denied. On the contrary, Defendants did not create a new position for Plaintiff, and did not relieve her of her supervisory duties. Plaintiff's Affidavit, Exhibit A, ¶ 6-7, 9-10.

14. The new position was titled Medical Supports Coordinator which, despite the reduction in responsibility, was granted to Plaintiff without any reduction in salary or benefits. See Gibat Affidavit at Exhibit G attached thereto (PDS Employee Change Form dated January 19, 2007, reporting the Plaintiff's position change).

Response: Denied. On the contrary, Defendants did not create a new position for Plaintiff, and did not relieve her of her supervisory duties. Plaintiff's Affidavit, Exhibit A, ¶ 6-7, 9. Plaintiff asserts that the document referred to is false and fabricated by Defendants. ¶ 10

15. On February 5, 2007, Plaintiff returned to work in her new position but did not finish out the day and left.

Response: Denied as stated. Although Plaintiff returned to work on February 5, 2007, and did not finish out the day, it is denied that she returned to a "new position." Plaintiff's Affidavit, Exhibit A, ¶ 6-7, 9-10.

16. On February 6, 2007, Plaintiff provided PDS with a doctor's statement excusing her from work on February 5 and 6, 2007, "due to GI disorder." See Gibat Affidavit at Exhibit H, attached thereto.

   **Response: Admitted.**

17. Plaintiff returned to work on February 7, 2007 but left again on February 12, 2007, and presented a doctor's note stating that she would be unable to work from February 12 until February 21, 2007, due to depression. See Gibat Affidavit at Exhibit I, attached thereto.

   **Response: Admitted in part. The document is question is attached to the Gibat affidavit as Exhibit J, and requests leave until February 25. There appears to be no Exhibit I, and therefore all of the succeeding Exhibits are misidentified in the Defendants' Motion and the Gibat Affidavit.**

18. On the latter date, Ms. O'Brien presented PDS with a Family and Medical Leave Act form completed by a doctor in which she requested full leave for a period of between one month and six months based on "Extreme anxiety and severe depression. . .."[4] See Gibat Affidavit at Exhibit J attached thereto.

   **Response: Admitted, but the document referred to is Exhibit K.**

19. On that same date, Ms. O'Brien wrote a note asking that PDS pay her accumulated remaining paid leave during the beginning portion of her leave. See Gibat Affidavit at Exhibit K attached thereto. Once this time was paid out, Ms. O'Brien's leave would be unpaid. PDS approved the FMLA leave and paid out the time to Ms. O'Brien. See Gibat Affidavit.

   **Response: Admitted, but the Exhibit is labeled L.**

20. The FMLA form does not at any point make reference to Crohn's disease as the cause of Ms. O'Brien's inability to work.

   **Response: Admitted. Plaintiff requested leave because of depression at the suggestion of Defendant Trescott. Plaintiff's Affidavit, ¶ 24-28.**

21. Then, on or about February 21, 2007, PDS received a standard questionnaire from the local Unemployment Benefits office notifying them that on February 18, 2007, Ms. O'Brien had applied for

6

unemployment benefits, stating that as of February 21, 2007, she was no longer employed at PDS. See Gibat Affidavit at Exhibit L, attached thereto (Notice of Determination dated March 19, 2007from the Commonwealth of Pennsylvania Department of Labor and Industry, Bureau of Unemployment Compensation Benefits and Allowances).

**Response: Denied as stated. Defendant appears to be referring to a document other than the Notice of Determination, which is dated March 19, 2007, and is attached to the Gibat Affidavit as Exhibit M. The document to which Defendants appear to be referring is not attached to their Motion. However, Plaintiff denies that she ever represented to the Unemployment Compensation Bureau that she "was no longer employed at PDS." To the contrary, as the Notice of Determination indicates, she stated that she was not able to accept any type of work, and that her last day of work at PDS was February 21, 2007.**

22. In that Notice of Determination, the Commonwealth found the following facts: Ms. O'Brien stated that she was last employed at PDS as of February 21, 2007, and that, as of that date, her health problems and the resulting restrictions in her ability to work, "were so great that she was unable to accept any type of work. As such, there was no work that the Employer could offer the Claimant." Gibat Affidavit at Exhibit L at page 1 "Discussion."

**Response: Admitted that the Notice of Determination, being a written document, speaks for itself.**

23. As Ms. O'Brien was unable to show that she was "able and available for suitable work," the Commonwealth denied her unemployment benefits.

**Response: Admitted.**

24. Notably for purposes of this lawsuit, the Determination denying the Plaintiff unemployment benefits was mailed by the Commonwealth on March 19, 2007, presumably reaching each of the parties several days later. See Gibat Affidavit at Exhibit L.

**Response: Admitted in part and denied in part. Plaintiff acknowledges that she received the Notice of Determination within several days following March 19, 2007. Defendants do not allege, and Plaintiff does not know, when Defendants received a copy.**

25. During the ensuing few days, on March 22, 2007, PDS sent Plaintiff a letter of termination (see Exhibit M, attached to the Gibat Affidavit) and thereafter, also sent an Appeal form to the Unemployment authorities **supporting** Ms. O'Brien's application for benefits and stating, "As Employer, we feel Claimant should be eligible for unemployment benefits. When released from doctors [sic] care employee will resume employment with Person Directed Supports," thus evidencing a clear intention to support Plaintiff in having an income stream during her disability and also demonstrating that, if she was cleared to return to employment, she could do so with PDS.

   **Response: Denied as stated. The factual elements of this paragraph, namely that Defendants sent a letter of termination, and a letter to Unemployment are admitted. The intent of Defendants is unknown to Plaintiff, and are not entitled to any weight on a Motion for Summary Judgment. Furthermore, under the FMLA, Defendants' motives, good or ill, are not a proper subject of the Court's concern.**

26. After several weeks, they received word from the Plaintiff that she actually intended now to return to work and that her doctor had cleared her to do so.

   **Response: Admitted that after Plaintiff was denied unemployment compensation benefits, she requested a reasonable accommodation under the ADA to return to work in a modified position. Denied that Plaintiff ever represented to Defendants that she was able to return to work in her original position, nor that she had been cleared to do so. Plaintiff's Affidavit, ¶ 35-41.**

27. On March 12, the Plaintiff met with the Defendant Trescott to discuss Plaintiff's plans and intentions and repeated her intention to return to work.

   **Response: Admitted.**

28. Ms. Trescott informed Ms. O'Brien at that time that, because her doctor had so recently described her as being completely disabled from all work,

she could only return to work if she provided PDS with an updated medical certification clearing her to return.

**Response: Admitted.**

29. In a follow-up conversation between the two on March 15, 2007, the Plaintiff reported that she had obtained the necessary written medical clearance and that she would provide the documentation of her medical clearance to PDS on or before the end of the day on March 22, 2007, intending to return to work the next day, March 23, 2007.

**Response: Admitted in part. It is admitted that on or about March 15, 2007, Plaintiff told Defendant Trescott that she obtained a clearance to return to work in a modified position. Denied that Plaintiff stated that she would supply the clearance on March 22, 2007. Rather, Plaintiff stated that she would supply the clearance when she reported to work on March 23. Plaintiff's Affidavit, Exhibit A, ¶ 35-42.**

30. During this period, PDS also advised the Plaintiff that, while she was welcome to return to work with appropriate medical clearance, in light of her declaration to the unemployment authorities that she was no longer employed, if she did not provide the medical clearance and did not return to work or otherwise clarify her status, PDS would consider her to have resigned from employment effective March 22, 2007. Gibat Affidavit.

**Response: Denied. No such statement was ever made. Plaintiff's Affidavit, Exhibit A, ¶ 35-42.**

31. When that day came, and then went, the Plaintiff failed to contact PDS.

**Response: Denied as stated. Assuming that "that day" refers to March 22, it is admitted that Plaintiff did not contact PDS. However, on the date promised, March 23, she presented herself for work with a medical clearance, which she gave to Defendant Trescott, and which is attached to Plaintiff's Answer to Defendants' Motion as Exhibit C. Plaintiff's Affidavit, Exhibit A, ¶ 43.**

32. She did not resign, she did not provide the written medical clearance she said she had obtained the week before, and she did not state that she intended to continue her medical leave.

**Response: Denied for the reasons set forth in answer to paragraphs 30-**

9

32.

33. Without any word from the Plaintiff about her status or availability, PDS wrote to her and stated that they accepted her silence as her resignation, effective that date. See Gibat Affidavit at Exhibit M, attached thereto (Letter of termination dated March 22, 2007).

**Response: Admitted in part and denied in part. It is admitted that Defendants sent Plaintiff a letter dated March 22, 2007 (which is actually Exhibit N). However, Plaintiff disbelieves that the letter was drafted and sent on March 22 because no mention of this was made when Plaintiff presented for work on March 23 and provided Trescott with the medical request for modified duty. The balance of the allegations of this paragraph are denied for the reasons set forth in answer to paragraphs 30-32. Plaintiff's Affidavit, Exhibit A, ¶ 43-46**

## B. Plaintiff's Supplemental and Counter-Statement of Undisputed Facts.

Plaintiff respectfully incorporates her Affidavit (Exhibit A) and separately filed statement undisputed facts.

## III. ARGUMENT

### A. Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The evidence of the nonmovant is to be credited and all justifiable inferences are to be drawn in his favor. *Kach v. Hose*, 589 F.3d 626, 633-34 (3rd Cir. 2009). The motion can be granted only if the evidence is "so one-sided that one party must prevail as a matter of law." *Id.*

## B. Plaintiff Has Made Out a *Prima Facie* Case for Violation of the FMLA

### 1. Interference

Plaintiff has brought suit pursuant to the Family & Medical Leave Act (the "FMLA"). The purpose of the Act is to balance the demands of the workplace with the needs of families, and to entitle employees to take reasonable leave for medical reasons. The FMLA seeks to accomplish the above purposes in a manner that accommodates the legitimate interests of employers. 29 U.S.C. § 2601(b)(1)-(3). Defendant does not contest that Ms O'Brien was eligible for FMLA leave, nor that her leave was qualifying leave.

As this Court noted in *Barron v. Quest Diagnostics, Inc.*, 2010 U.S. Dist. LEXIS 17901, 10-11 (E.D. Pa. Mar. 1, 2010), the FMLA provides for two distinct causes of action. First, it creates substantive rights for eligible employees, often referred to as the "entitlement" or "interference" provisions, which set floors for employer conduct. quoting C*hurchill v. Star Enters.*, 183 F.3d 184, 192 (3rd Cir. 1999). Eligible employees "shall be entitled to a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

To assert an interference claim, the employee needs to show only that she was entitled to benefits under the FMLA and was denied them. 29 U.S.C. §§ 2612(a), 2614(a). The Act provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any

right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Under this theory, the employee need not show that she was treated differently than others. *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3rd Cir. 2005). Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision. *Id.* at 119-120. An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA. *Id.* Therefore, the issue raised on page 13 of Defendants' Summary Judgment motion, that the termination was motivated by a legitimate business reason does not constitute a defense to a FMLA interference claim.

Defendants concede that Plaintiff was eligible for leave, and that the leave that began on February 21, 2007 was qualifying leave. The FMLA request was for a period of one to six months (Defendants' Exhibit K), although Ms O'Brien understood the period protected by the FMLA would have lasted only until May 2007. *See O'Brien Affidavit,* ¶ 29. Ms O'Brien was therefore entitled to the protections of the FMLA for twelve weeks, or until May 16, 2007.[5] Defendant admits that it terminated her on March 22, 2007. Plaintiff has therefore established a clear right to leave, and that Defendants terminated her employment, which had the effect of denying her the protections of the FMLA.

Upon return from a qualified absence, an employee is entitled to be restored to her former position or to an "equivalent position." 29 U.S.C. § 2614(a)(1); see also *Sommer v. Vanguard Group*, 461 F.3d 397, 399 (3rd Cir. 2006). An employer's

---

[5] Plaintiff requests that the Court take judicial notice of the twelve week period, and attaches a calendar for 2007 in support thereof, as Exhibit B.

failure to reinstate an employee "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment" upon return from FMLA leave constitutes interference with that employee's FMLA rights. 29 U.S.C. § 2614(a)(1)(B); *Sommer*, 461 F.3d at 399.

However, an employee's right to reinstatement is not absolute. "[T]he FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3rd Cir. 2007). The only defense to this offered is that Plaintiff filed for Unemployment Benefits, representing that she was medically unable to work, which is consistent with her request for medical leave as set forth in Defendants' Exhibit K, but sought to return to work with the accommodation of a different position.[6] This request is not inconsistent with the leave request, in that her physician continued to opine that she was unable to perform the duties of her position, but that she could perform the duties of a different position. See Exhibit C hereto. Furthermore, Plaintiff's Affidavit[7] (Exhibit A) states that she applied for unemployment at the suggestion of Defendant Treskott. Therefore, Defendants cannot claim that her application for Unemployment benefits defeats her FMLA interference case.

---

[6] Whether or not this is a reasonable accommodation under the ADA will be discussed below.

[7] Plaintiff was not deposed in this case.

## 2. Discrimination Under the FMLA

Ms O'Brien also claims that PDS discriminated against her for taking of medical leave by terminating her employment. In order to establish a *prima facie* case of discrimination under the FMLA, she must prove: (1) that she took an FMLA leave; (2) that she suffered an adverse employment decision; and (3) the adverse employment decision was causally related to her FMLA leave. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004).

As set forth above, it is undisputed that Plaintiff took FMLA leave, and termination is unquestionably an adverse employment action. This Court held in *Barron* that

> When a plaintiff alleging termination presents direct evidence that her use of FMLA leave was "a substantial factor" in the decision to fire her, her claim is analyzed under the framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *See Conoshenti*, 364 F.3d at147. When direct evidence is presented, "the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even it if had not considered the FMLA leave." *Id.* Direct evidence is evidence "sufficient to allow the jury to find that 'the decision makers placed substantial negative reliance on [the protected activity] in reaching their decision' to fire [the plaintiff]." *Id.* at 148 n. 10.

Here, Defendants do not contest that Plaintiff was terminated because of her being on leave. While they characterize the decision as a belief that Plaintiff was able to return to work, but failed to do so, the very documents that they have produced, along with the Gibat Affidavit establishes that they <u>disbelieved</u> that

Plaintiff was able to return to work, although she was attempting to do so. Consequently, they requested that she obtain medical documentation that she was able to return to work, which they concede she did not do. Therefore, the only reasonable belief that Defendants could have possessed was that Plaintiff was unable to return to work, and remained eligible for leave. Defendants cannot, therefore, carry their burden that they would have terminated Plaintiff for reasons other than leave, essentially because they concede the connection with the leave. Plaintiff would therefore be entitled to Summary Judgment on all issues under the FMLA retaliation claim, and the matter set down for a hearing on damages. This is so regardless of which party inferences are drawn in favor of.

### C. Plaintiff's Application for Unemployment Benefits While on FMLA Leave Does Not Defeat Either Her FMLA Case or Her ADA Case

Defendants base their Motion on the assertion that because Plaintiff made a claim for unemployment benefits, asserting that she was unable to work because of her medical conditions, she cannot simultaneously be a qualified individual with a disability. Defendants cite *Krause v. American Sterilizer Company*, 984 F.Supp. 891 (W.D. Pa. 1996), aff'd in part, aff'd in part on other grounds 126 F.3d 494 (3rd Cir. 1997), for the proposition that Plaintiff is estopped from asserting that she is a qualified individual with a disability. Defendants fail to recognize that *Krause* is not the last word on this subject. As the Court is well aware, the United States Supreme Court addressed this issue in *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (U.S. 1999), and found no absolute estoppel where an ADA claimant

has previously made a representation of inability to work in support of a Social Security Disability case.  The Supreme Court stated that

> we would not apply a special legal presumption permitting someone who has applied for, or received, SSDI benefits to bring an ADA suit only in "some limited and highly unusual set of circumstances."

526 U.S. at 805.  The Supreme Court recognized a flexible approach that requires the Court to examine the facts.  Specifically, the Court took note of the distinction between a standard, such as Social Security Disability which requires an outright inability to work but does not take account of ability with accommodation, and the ADA, which takes account of the renewed abilities that an accommodation would provide.  Defendant does not attempt to apply any analysis to its position, relying upon the antiquated precedent of *Krause*.

Here, Plaintiff sought FMLA leave on February 21, 2007, representing that she was unable to work, and presenting a certification from a physician, which the employer accepted, and placed her on FMLA leave.  The certification stated that she was completely unable to work for a period of between one and six months.  As noted above, Defendants do not contest that Plaintiff was eligible for FMLA leave, and that her leave was qualifying leave.  At the same time, she applied for Unemployment Compensation benefits, again stating that she was unable to work.  Unfortunately, that disqualified her from employment.  However, on March 15, 2007 (according to Defendants, see statement of fact number 30, above) prior to the unemployment decision of March 19, Plaintiff sought to return to work, stating

that she was able to return with accommodation. She obtained a certification, which she presented to Defendants on March 23, stating that she could return to work with the accommodation of "alternative career/work opportunities and training." *See* Plaintiff's Exhibit C. Of course, Defendants were not required under the FMLA to discuss accommodation. *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 384 (3rd Cir. 2002)(the FMLA does not require an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave). Under the ADA, of course, Defendants were required to engage in an interactive process.[8] Therefore, because Plaintiff was not able to return to work without accommodation, her right to FMLA leave continued.

Since she was requesting an accommodation, there was no inconsistency between her statements to the Unemployment Board and in support of her FMLA request, and her request to return to work three weeks later with accommodation. In reality, she did not obtain this clearance until a month later, which comports with the low range of the leave requested on February 21. Under the circumstances, there are no factors present in support of estoppel.

### D. Plaintiff Has Sustained Her *Prima Facie* Case for Violation of the ADA

Defendants have not sustained their burden of demonstrating that Plaintiff is not entitled to relief as a matter of law under the provisions of the ADA and

---

[8] As discussed in the following section.

PHRA, the standard for summary judgment under Rule 56.[9]   The ADA prohibits an employer from discriminating against a qualified individual with a disability because of that individual's disability and additionally requires employers to provide requested accommodation according to its provisions. *See* 42 U.S.C. § 12112(a).   An individual is considered "disabled" under the ADA if she:

> (A)[has] a physical or mental impairment that substantially limits one or more of [his or her] major life activities . . . ;
>
> (B) [has] a record of such impairment; or
>
> (C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(2). Defendants concede that Plaintiff is "disabled". Defendants, additionally, concede that they were aware of Plaintiff's disability.  As set forth above, the argument that Plaintiff was not qualified by virtue of estoppel is easily disposed of.   However this argument ignores the fact that Plaintiff requested reasonable accommodation of reassignement or job modification, and that Defendants terminated her during the "interactive process".

The ADA states that a "qualified" individual is one who can perform the essential functions of her employment <u>with accommodation</u>. <u>See</u> 42 U.S.C. § 12111 (8). Although Defendants have argued that Plaintiff was not qualified by virtue of the medical certification that she provided in support of her FMLA leave, it makes no sense to say that Plaintiff was not qualified because she was not able to perform

---

[9] The ADA and PHRA are read *in pari materia.  Weston v. Pennsylvania*, 251 F.3d 420 (3rd Cir. 2001); *Wein v. Sun Company*, 936 F.Supp. 282 (E.D. Pa. 1996).

essential job functions <u>during her leave</u> – the very purpose of the FMLA is to provide job security while a person is unable to work.

In *School Board of Nassau County v. Arline,* 480 U.S. 273 (1987), the Supreme Court recognized that a fact-specific "individualized inquiry" is required in determining whether a disabled individual is "qualified" for a particular job. Stressing the Rehabilitation Act's purpose, the Supreme Court noted: "Such an inquiry is essential if § 504 is to achieve its goal of protecting handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear…" See also *Holiday v. City of Chattanooga* 206 F.3d 637 (6th Cir. 2000); *EEOC v. Prevo's Family Market, Inc.* 135 F.3d 1089 (6th Cir 1998) (need for individualized, case-by-case analysis of the employee's disability and specific essential job functions). "Both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith… It logically follows, therefore, that the party who fails to communicate or engage in a dialogue with the other party is not acting in good faith". *Mengine v. Runyon*, 114 F.3d 415 (3rd Cir. 1997); *Taylor v. Phoenixville*, 185 F.3d 296 (3rd Cir. 1999) ("It may be necessary for the employer to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.")

In *Shapiro v. Township of Lakewood*, 292 F.3d 356 (3rd Cir. 2002), the Court noted that the 3rd Circuit has "endorsed" the concept of the interactive process. Once a disabled employee has requested accommodation, the employer must make "reasonable effort to determine the appropriate accommodation… through a

flexible, interactive process that involves both the employer and the employee." 29 C.F.R. Pt. 1630. The employer must make a "good faith effort" to assist the employee in seeking and determining reasonable accommodations. citing *Taylor v. Phoenixville Sch. Dist.*,185 F.3d 296 (3rd Cir. 1999) (an employee need not use any particular words or phrases in requesting reasonable accommodation).

In *Taylor*, the Court stated:

> An employee's request for reasonable accommodation requires a great deal of communication between the employee and employer. Both parties bear responsibility for determining what accommodation is necessary. Neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

184 F.3d at 312.

The process of determining accommodation under the interactive process is a "joint undertaking". *Vendetta v. Bell Atlantic* 1998 U.S. Dist. Ct. Lexis 14014 (E.D. Pa. 1998). It is well established that the interactive process must include a consideration of reassignment or partial reassignment and/or potential restructuring to any available job or function that the Plaintiff can perform. See *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) (rejecting the defendant's argument that the "ADA does not obligate an employer to reassign an

employee to a different type of position where the employee . . . can no longer perform the essential functions of the job she currently holds"). See also *Hohider v. UPS*, 574 F.3d 163 (3rd Cir. 2009) (employer is required to engage in a good faith interactive process; and must make a good faith effort to assist the employee in seeking accommodation).

"An employer who fails to engage in the interactive process runs a serious risk that it will erroneously overlook an opportunity to accommodate a statutorily disabled employee, and thereby violate the ADA". *Deane v. Pocono Med.*, 142 F.3d 138 (3rd Cir. 1998). *Hohider, supra* also addresses the illegality of "100% healed" before return to work policies, if the employer applies such a policy without the interactive process and "individualized assessment".

Here, it is uncontested that Plaintiff requested to return to work on or about March 15, 2007, and Defendants requested medical certification that she was able to return. Although the Defendants concede that this request was made, they assert that there was a commitment to return the certification by March 22, which Plaintiff denies. This is not a material dispute however, because regardless of whether Plaintiff provided a clearance, she was protected from termination by the FMLA. Plaintiff did provide a certification, which amounted to a request for reasonable accommodation on the day that all of the parties agree she intended to return to work, March 23. However, Defendants terminated (or at least perpetuated the termination from March 22), and failed to further interact. Since Defendants have conceded that Plaintiff's medical condition constituted an ADA

disability, they were required to interact with her. The failure to do so, and instead to terminate her employment, constitutes an adverse material employment action, and an ADA violation.

## IV.  CONCLUSION

As demonstrated above, this case turns on direct statements of a decision maker, along with inferences to be drawn from conduct and rationales, the *sine qua non* of a triable issue of material fact. Valiant though Defendant's efforts may have been to paint the facts in a light favorable to it, the Court may not accede to the invitation to ignore the well established requirement that all inferences be drawn in favor of Plaintiff. Additionally, since Defendant's carry an affirmative burden of persuasion in the direct evidence case under *Price Waterhouse*, and the evidence proffered is dependant upon the credibility of the witnesses, summary judgment is inappropriate.

HAHALIS & KOUNOUPIS, P.C.

By:/s/___David L. Deratzian_____
    David L. Deratzian, Esquire
    20 East Broad Street
    Bethlehem, PA  18018
    (610) 865-2608
    Attorneys for Plaintiff

Dated: May 17, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused a copy of Plaintiffs' Motion for Summary

Judgment to be served this 17th day of May, 2010 by ECF filing:

Guy Vilim, Esquire
**Vilim & Maddox, LLC**
**6703 Germantown Avenue, Suite 220**
**Philadelphia, PA 19119**


/s/_ **David L. Deratzian**_____
David L. Deratzian