IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELINDA O'BRIEN** | : | CIVIL ACTION |
| | : | |
| **Plaintiff** | : | |
| vs. | : | NO. 09-CV-02629 |
| | : | |
| **PERSON DIRECTED SUPPORTS,** | : | |
| **INC., et al.** | : | |
| | : | |
| **Defendants** | : | |

<u>MEMORANDUM</u>

**STENGEL, J.**                                                                                                       September 13, 2010

**I.      INTRODUCTION**

Before the court is defendants' motion for summary judgment on plaintiff's claims under the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff Melinda O'Brien brings this action against her former employer, Person Directed Supports, Inc. ("PDS"), as well as individual defendants who served as PDS's Executive Director, Chief Operating Officer, and Office Manager. Plaintiff claims that she was terminated from her job while on an approved FMLA leave and managing both physical and mental illnesses. She further alleges that defendants failed to accommodate her conditions. She brings claims alleging retaliation and failure to accommodate under the ADA and the PHRA, and interference with her rights and discrimination under the FMLA. Because material facts are still in dispute, defendants' motion is denied.

## II. STANDARD OF REVIEW

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories, demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. It is not the role of the trial judge "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial," *id.* at 250, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255. At "the summary judgment stage, in other words, 'all that is required [for a non-moving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at trial] the parties' differing versions of the truth.'" *Jackson v. Univ. of Pittsburgh*, 846 F.2d 230, 233 (3d Cir. 1987) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

## III. BACKGROUND

A. *Plaintiff's Allegations*[1]

Plaintiff is a former employee of PDS, which is a non-profit corporation that offers residential and related services to persons with mental and physical disabilities. (Pl.'s Resp. To Def.s'

---

[1] Because it is defendants who move for summary judgment, the court will view the facts in the light most favorable to plaintiff. This section cites to plaintiff's response to defendants' Statement of Facts, which can be found starting on page three of plaintiff's brief, and to plaintiff's Counterstatement of Facts.

2

Statement of Facts ¶¶ 2-3). Plaintiff began her career at PDS in April 2004; by November of that year, she had been promoted to a supervisory position. (*Id.* at ¶¶ 5, 7).

Plaintiff suffers from Crohn's Disease, which affects her intestinal and digestive track. (*Id.* at ¶ 9). On January 18, 2007, plaintiff did not report to work and presented a note from her doctor stating that, because of an aggravation of her Crohn's Disease, she could not return to work until February 5, 2007. (*Id.* at ¶ 11). Plaintiff returned to PDS on February 5, 2007, but could not complete the day. (*Id.* at ¶ 15). Plaintiff presented a note from her doctor which excused her from work due to her gastrointestinal disorder. (*Id.* at ¶ 16). Plaintiff returned to work on February 7, 2007, but left again on February 12. She presented a doctor's note stating that because she was suffering from depression, she would be unable to work between February 12 and February 25, 2007. (*Id.* at ¶ 17).

On February 21, 2007, plaintiff presented PDS with a FMLA request form completed by her doctor. (*Id.* at ¶ 18). Plaintiff requested full leave of between one and six months because of extreme anxiety and severe depression. (*Id.*) Plaintiff asked that PDS provide her with any accumulated pay that she was entitled to at the beginning of her leave up front, with the understanding that the balance of her leave would be unpaid. (*Id.* at ¶ 19). Defendants did not advise plaintiff when her FMLA leave would end, but she understood that it would conclude some time in May 2007. (Pl.'s Counterstatement at ¶ 25).

Also on or about February 21, 2007, PDS received a questionnaire from the Unemployment Benefits office pertaining to an application for benefits submitted by plaintiff. (Pl.'s Resp. To Def.s' Statement of Facts at ¶ 21). Plaintiff had applied for benefits at the suggestion of defendant Cheri Trescott, the office manager of PDS. (Pl.'s Counterstatement at ¶ 28). The Notice of Determination prepared by the Commonwealth in response to Plaintiff's claim for benefits found that plaintiff was

last employed at PDS on February 21, 2007, and that her health problems "were so great that she was unable to accept any type of work." (Pl.'s Resp. To Def.s' Statement of Facts at ¶ 22). On March 19, 2007, the Commonwealth denied plaintiff's request for benefits because plaintiff could not show that she was "able and available for suitable work." (*Id.* at ¶ 23).

Plaintiff claims that while her application for unemployment benefits was pending, no one from PDS contacted her to see if she intended to resign her position or to continue her medical leave. (Pl.'s Counterstatement at ¶ 30). Once she received notice that her application for benefits had been denied, plaintiff contacted both her doctor and PDS to see if she could return to work before her FMLA leave concluded. (*Id.* at ¶¶ 31-32). Defendants advised plaintiff that she would need medical clearance to return to work. (*Id.* at ¶ 33). Plaintiff's treating physician, Dr. Gonzalez, advised her that she could return to work if her position was modified or changed. (*Id.* at ¶ 34). Plaintiff informed Trescott that she would return to work on March 23, 2007 with a medical release in hand, prepared to discuss potential modifications to her position or placement in another position. (*Id.* at ¶ 36).

Plaintiff did appear at PDS' office on March 23, 2007, and presented her medical clearance to Trescott. (*Id.* at ¶ 39). Plaintiff and Trescott did not discuss any potential accommodation of plaintiff's ongoing illness or adjustment of plaintiff's duties. (*Id.* at ¶ 41). Plaintiff and Trescott did not discuss any potential termination of plaintiff's employment. (*Id.* at ¶ 40). After the meeting, however, plaintiff received a letter terminating her employment, which was dated March 22, 2007. (*Id.* at ¶ 42).

B. *Areas of Factual Dispute*

The parties disagree about many material facts in this case. Most importantly, defendants allege that, in response to the initial flare-up of plaintiff's Crohn's Disease in February 2007, PDS

created a new position for her within the organization. (Def.'s Statement of Facts at ¶ 13).[2] Defendants allege that although plaintiff's compensation remained the same, she was relieved of supervisory duties. (*Id.* at ¶ 14). Defendants characterize the creation of this new position as an effort to accommodate plaintiff's stated inability to continue performing as a supervisor. (*Id.* at ¶ 13). Plaintiff, however, denies that she ever assumed a new, gentler position. (Pl.'s Resp. To Def.s' Statement of Facts at ¶ 13).

Defendants allege that PDS staff reached out to plaintiff once PDS received the questionnaire in connection with plaintiff's application for unemployment benefits. (Def.'s Statement of Facts at at ¶ 26). Defendants allege that the questionnaire suggested that plaintiff was no longer employed at PDS. (*Id.* at ¶ 21). When plaintiff indicated that she wished to return to work, PDS asked that she supply proof that she was cleared to return by her physician. (*Id.* at ¶ 30). Defendants also allege that they informed plaintiff that if she did not obtain medical clearance by March 22, 2007 and either return to work or otherwise clarify her status, PDS would consider her to have resigned. (*Id.*) According to defendants, because plaintiff did not contact PDS by the appointed date, she was terminated. (*Id.* at ¶ 33).

Plaintiff disputes all of those allegations, and counters that no one from PDS contacted her after receiving notice of her application for unemployment benefits to ask if she intended to resign. (Pl.'s Counterstatement at ¶ 30). She also disputes the notion that she indicated to the Commonwealth that she had resigned her position at PDS. (*Id.* at ¶ 29). Finally, plaintiff argues that

---

[2] Defendants failed to follow the court's standing order, which requires the parties to file a separate statement of facts with motions for summary judgment. Nonetheless, Plaintiff reproduced the averments in Defendant's brief in paragraph form, and then responded to those paragraphs. This section refers to the paragraph numbers assigned to the averments beginning on page 3 of Plaintiff's brief.

she never promised to contact PDS by March 22, 2007, and that she understood she was to arrive at work on March 23.  (*Id.* at ¶¶ 36-37).

## IV.   ANALYSIS[3]

A.  *Plaintiff's Claims Under the ADA*

To prevail on a claim under the ADA, Plaintiff must show that she was "a qualified individual" with a disability, defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12112(a); 42 U.S.C. § 12111(8).  Defendants assert that plaintiff cannot prove that she was a qualified individual at the time of her termination, because in her application for unemployment benefits she represented that her illnesses "were so great that she was unable to accept any type of work."  (Pl.'s Resp. To Def.s' Statement of Facts at ¶ 22).  Defendants argue that plaintiff cannot logically claim that she was able to work with an accommodation when she told the Commonwealth that she could not work at all.

A unanimous Supreme Court has held, however, that a litigant may pursue Social Security disability benefits while also pressing a claim under the ADA.  *Cleveland v. Policy Mgmt. Systems Corp.*, 526 U.S. 795, 797 (1999).  To survive a motion for summary judgment on an ADA claim, such a litigant must be able to adequately explain why any representations he or she makes regarding disability to the Social Security Administration are consistent with a claim that the he or she can perform essential job functions with an accommodation.  *Id.* at 798.  The Supreme Court also noted that it is not unusual for litigants to plead in the alternative in many kinds of civil matters; thus, there

---

[3] Plaintiff's claims under the PHRA are analyzed under the same standards used for parallel, federal claims brought under the ADA.  *Collwell v. Rite Aid Corp.*, 602 F.3d 495, 500 n.2 (3d Cir. 2010).

is no reason why a party should not pursue both disability benefits and relief under the ADA. *Id.* at 806.

The logic of *Cleveland* applies in this case: a jury could find that while plaintiff was unable to work at the time that she completed her application for unemployment benefits, she was prepared to work a few weeks later, provided that PDS made some accommodation for her illness. Or, put another way, she truly was unable to work *unless* certain accommodations were made by PDS. Plaintiff's application for benefits, as described by the parties and as shown in various exhibits, suggests that she presented herself as unable to work in the short term. For example, the Notice of Determination prepared by the Commonwealth's Department of Labor and Industry, attached to defendants' brief as Exhibit M, indicated that "The Claimant took a leave of absence due to health problems." A leave of absence is not equivalent to a resignation. Defendants themselves responded to the denial of plaintiff's request for benefits by participating in her appeal and writing "As Employer, we feel claimant should be eligible for unemployment benefits. When released from doctors [sic] care employee will resume employment with Person Directed Supports." (Def.s Br. at P. 6 n.4). These statements show that neither plaintiff nor defendants consistently presented plaintiff's illness as a permanent disability, let alone a permanent disability that could not be accommodated. As a result, plaintiff's application for unemployment benefits does not estop her from persuading a jury that at the time of her termination, she was a qualified individual with a disability.

Defendants also move the court for summary judgment on plaintiff's claim for failure to accommodate under the ADA. Defendants claim that they did accommodate plaintiff when she articulated a need for reduced responsibilities, and also accommodated her request for FMLA leave. (Def.'s Br. at P. 10 n.5). Plaintiff disputes defendants' assertion that they created a new position to

allow her to continue working while managing her illness; she also provides evidence, in the form of a note from her physician, that she did request an accommodation and a realignment of her responsibilities. A jury must determine which party's account of events is correct, and summary judgment is denied.

      B. *The Retaliation Claims under the ADA and FMLA*[4]

The parties disagree about which legal framework applies to the court's analysis of plaintiff's claims for retaliation under the ADA and the FMLA. Defendants view this as a case involving indirect evidence of retaliation, whereas plaintiff argues that she has produced direct evidence. The court would deny defendants' motion under either framework.

Direct evidence is "sufficient to allow the jury to find that 'the decision makers placed substantial negative reliance'" on the plaintiff's decision to take a medical leave in deciding to fire her. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 148 n.10 (3d Cir. 2004). Once a plaintiff produces direct evidence of retaliation for taking a medical leave, the burden shifts to the defendant employer to prove that it would have fired the plaintiff even if plaintiff had not taken the leave. *Id.* at 147.

Here, plaintiff argues that defendants asked her to produce a medical release in order to return to work, and then terminated her when she did not produce the medical release. (Pl.'s Br. at 15). Thus, plaintiff argues, defendants could only infer at the time of her termination that she could not return to work and therefore remained eligible to continue her FMLA leave. (*Id.*) The fact that defendants terminated her anyway is, according to plaintiff, direct evidence of retaliation or

---

[4] The parties use varying language to describe Plaintiff's claim under the FMLA. Defendants describe it as a claim that they retaliated against Plaintiff because she took a medical leave. (Def.'s Br. P. 13). Plaintiff describes it as a claim that Defendants discriminated against her because she took a medical leave. (Pl.'s Br. P. 14). This difference in language does not alter the court's analysis of the claim.

discrimination. Defendants offer a different interpretation of events. In defendants' telling, plaintiff was terminated not because she was on leave, but because she failed to respond to requests to clarify whether she had resigned, and because she did not produce a medical release permitting her to return to work. (Def.'s Br. P. 12).

A jury will need to decide whether defendants did, in fact, communicate to plaintiff that she needed to provide a medical release by March 22, 2007 or else defendants would consider her to have resigned. If a jury does not credit defendants' version of events, it may accept plaintiff's contention that her termination was motivated solely by the desire to rid PDS of an employee on medical leave.

Even if I reject plaintiff's contention that she has produced direct evidence of retaliation or discrimination, I would still deny defendants' motion for summary judgment because a jury might find that plaintiff has produced indirect evidence of discrimination. Claims that rest on indirect evidence must be analyzed under the familiar framework of the Supreme Court's decision in *McDonnell Douglas Corporation v. Green*. *Dodd v. SEPTA*, 2008 U.S. Dist. Lexis 56301, at *10 (E.D. Pa. July 24, 2008) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)).

To bring a retaliation claim using indirect evidence of discrimination, the plaintiff must first establish a *prima facie* case. The plaintiff can show a *prima facie* case by establishing that she engaged in a protected activity; her employer took an adverse action against her; and there is a causal connection between the protected activity and the adverse action. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). The burden then shifts to the employer to proffer legitimate, non-discriminatory reasons for the adverse action. *Id.* at n.2. If the employer meets that burden, the employee must provide evidence that the employer's stated reasons are pretextual, and that the real reason for the adverse action was discriminatory. *Id.* A plaintiff can meet this final burden by showing that an employer's alleged reasons for the action contain "such weaknesses, implausibilities,

inconsistencies, incoherencies or contradictions" that a jury could rationally fail to credit them. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

Again, defendants assert that plaintiff was terminated because she failed to respond to requests for a medical release permitting her to return to work, and failed to communicate whether she intended to resign from PDS. On the other hand, plaintiff alleges that she did provide a medical release in a timely manner, and that no one from PDS indicated that her job was in jeopardy. If a jury credits plaintiff's version of events, it might also conclude that defendants' proffered reason for plaintiff's termination is implausible and incoherent.

    C.  *Plaintiff's Interference Claim Under the FMLA*

The FMLA entitles employees to take up to twelve weeks of time off to address serious medical issues, without fear of termination or other reprisals by employers. 29 U.S.C. § 2612(a)(1)(D); 29 U.S.C. § 2615(a)(1). An interference claim under the FMLA does not depend on allegations of discrimination or disparate treatment by an employer; such a claim only concerns whether an employee is deprived of a leave to which he or she is entitled. *Callison v. City of Philadelphia*, 430 F.3d 117, 119-120 (3d Cir. 2005).

Plaintiff's theory of the case is that defendants terminated her because she took FMLA leave. Defendants argue that they in fact approved plaintiff's FMLA leave, and terminated her "after she obtained leave based on a claim that she was totally disabled, then declared she was no longer totally disabled but neither came to work nor offered any evidence of when or how she might do so." (Def.'s Br. P. 13).

Issues of material fact remain outstanding. Plaintiff claims that she did report to work on March 23, 2007, prepared to discuss how she would resume her career at PDS. If a jury believes her

version of events, it may also assign liability to defendants under the FMLA. Defendants' motion for summary judgment is therefore denied.

An appropriate Order follows.